IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
C/A NO. 4:11-cv-1715-RBH

| Carolyn Bishop Belcher, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) ) | |
| Michael Pacileo, individually and in his capacity as a police officer; North Myrtle Beach Police Department, an agency of the City of North Myrtle Beach, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Defendants, Michael Pacileo, individually and in his official capacity as a Police Officer in the North Myrtle Beach Police Department, and the City of North Myrtle Beach, by and through their undersigned counsel hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

Plaintiff, by and through her attorney, brought this suit pursuant to 42 U.S.C. § 1983 alleging that her Fourth Amendment rights were violated when she was unlawfully arrested without a warrant and without probable cause by the above named officer at her residence on March 27, 2009. She alleges the Police misidentified her as a woman wanted under an arrest warrant for larceny and arrested and confined her without probable cause on that charge. Plaintiff asserts additional claims for assault, battery, outrage and slander.

Warrant Officer Pacileo notes that while searching through warrant files, he located a felony arrest warrant for grand larceny for a suspect named "Carolyn Bishop Belcher (Plaintiff)." (Exhibit A, p. 1; Exhibit B, p. 1). Pacileo checked Belcher's name and date of birth through

1

DMV and noted she had a valid SC driver's license noting 1313 Edge Drive in North Myrtle Beach as her address. (Exhibit A, p. 1). On Friday March 27, 2009, Pacileo noted a red Ford Mustang in the driveway of the Edge Drive address and found that vehicle to be registered to Plaintiff. (Exhibit A, p. 2). Pacileo knocked on Plaintiff's door and after confirming it was Carolyn Bishop Belcher he was speaking with, he informed Plaintiff he had a warrant for her arrest. (Exhibit A, p. 2; Exhibit C, p. 9-10). Pacileo allowed Plaintiff to change her clothes and after leading her to his vehicle, informed her the warrant was for larceny of a golf cart. (Exhibit A, p. 2; Exhibit C, p. 10-12). Plaintiff denied ever owning a golf cart and expressed reservations about the arrest warrant being for her. (Exhibit A, p. 2). However, Pacileo confirmed with Plaintiff that the name, date of birth, SC driver's license number, and social security number on the arrest warrant were correct and accurate for Plaintiff and the physical description (height/weight/age) from the warrant also matched Plaintiff's appearance. (Exhibit A, p. 2; Exhibit B, p. 1). Although the phone number and Virginia address on the warrant did not match Plaintiff's information, Plaintiff admitted to Pacileo that she had previously lived in Virginia. (Exhibit A, p. 2). Under the totality of information available to Pacileo at the time, he believed the warrant to be for Plaintiff and placed her under arrest pursuant to this active arrest warrant. (Exhibit A, p. 2). After Plaintiff voluntarily complied with Pacileo's request to get into his car, she was transported to the police station and had the full arrest warrant read to her. (Exhibit A, p. 3; Exhibit C, p. 16-17). Plaintiff again denied knowledge of any of the people, addresses or circumstances noted in the warrant, and denied any wrongdoing. (Exhibit A, p. 3; Exhibit C, p. 19-20). In an abundance of caution and despite his confirmation of the correct and matching information contained in the arrest warrant, Pacileo contacted the Detective who had requested the warrant (Detective Lyman) and asked that he return to the police station as soon as possible

to address Plaintiff's repeated denials. (Exhibit A, p. 3; Exhibit B, p. 1). Pacileo informed the judge of his concerns in light of Plaintiff's continued denials and then attempted to contact the victim who originally reported the crime to confirm the correct alleged perpetrator was in custody. (Exhibit A, p. 3). Pacileo's attempts to contact the victim by phone and by visiting the victim's address were unsuccessful. (Exhibit A, p. 3). When Detective Lyman arrived at the station, he spoke with Plaintiff, and Officer Pacileo believes Detective Lyman realized that though Plaintiff was the person noted on the arrest warrant, she was not the alleged perpetrator named in the victim's complaint as the perpetrator of larceny. (Exhibit A, p. 3; Exhibit C, p. 32-36). Through communication between Detective Lyman and the Judge, Plaintiff was released. (Exhibit A, p. 3; Exhibit C, p. 32-36). Officer Pacileo arrested the correct person noted in the felony arrest warrant, but unfortunately, this person was not the alleged perpetrator of the larceny. (Exhibit B, p. 1).

## **SUMMARY JUDGMENT STANDARD**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is particularly strong when the nonmoving party bears the burden of proof." Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327.

The United States Supreme Court has stated the complaint must set forth "enough facts to state a claim to relief that is plausible on its face," finding that "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). Twombly further states that a plaintiff's "'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555, 1965 (citations omitted).

## ARGUMENT

**I. 42 U.S.C. 1983**

In order to maintain a successful § 1983 action, Plaintiff needs to demonstrate the following:

> In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Parratt v. Taylor, 451 U.S. 527, 527, 101 S.Ct. 1908, 1909 (1981). While the Plaintiff meets the first § 1983 action prong by complaining of actions performed by an officer in the line of duty,

4

the Plaintiff fails to demonstrate the officer wrongly deprived her of a Constitutional right.

Plaintiff alleges her Fourth Amendment rights were violated when Officer Pacileo falsely arrested and confined her without probable cause. It is crucial to note that Officer Pacileo arrested Plaintiff pursuant to an arrest warrant. Under § 1983, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998). It simply is not the duty of the arresting officer to assess an individual's guilt or innocence, but merely to serve the warrant. Campbell v. Fitzsimmons, 2010 WL 985331, at *3 (D.S.C. February 01, 2010). "Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on **mistaken identity** or a defense such as lack of requisite intent." Baker v. McCollan, 443 U.S.137, 145-46, 99 S.Ct. 2689 (1979) (emphasis added).

Plaintiff has made no specific allegations that the arrest warrant was facially invalid or defective in any way. In any event, the warrant was facially valid in that the name, birth date, social security number and SC Driver's License number all matched Plaintiff and were accurate. Further, the physical description noted on the warrant also matched Plaintiff. In addition, to show an officer seized an individual pursuant to an arrest warrant without probable cause, a plaintiff must show that the officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir.2007). Plaintiff has not made any such allegations, and even if Plaintiff were to allege the required elements above, those

5

allegations would fail against Pacileo because he was not the officer who requested the arrest warrant.

Officer Pacileo arrested Plaintiff pursuant to a facially valid warrant. The arrest warrant was for the Plaintiff, Carolyn Bishop Belcher, and Pacileo arrested the person named and identified (Date of birth, Social Security number, SC Driver's license number, and physical description) in the warrant. The fact that Plaintiff was not the alleged perpetrator of the crime reported by the victim is a separate issue not involving Officer Pacileo and not pled in this action. Plaintiff has failed to provide any evidence that Officer Pacileo's actions deprived her of her Constitutional rights under the law outlined in 42 U.S.C. § 1983.

Plaintiff's § 1983 complaint against the North Myrtle Beach Police Department, an agency of the City of North Myrtle Beach, necessarily fails on its face. To state a claim for relief under 42 U.S.C. § 1983, an aggrieved party must sufficiently allege that he or she was injured by "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a **"person"** acting "under color of state law." See 42 U.S.C. § 1983. Only "persons" may act under color of state law, therefore, a defendant in a § 1983 action must qualify as a "person." Roberson v. Thomas, 2012 WL 786275, at *2 (D.S.C. February 16, 2012). The United States Supreme Court has held that local governing bodies can be held liable as "persons' under a § 1983 action, but only under a specific set of conditions. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). The Court concluded "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Plaintiff has

made no such allegations against the City of North Myrtle Beach and has offered no evidence of any policy or custom.

**II. Officer Michael Pacileo is protected by Qualified Immunity**

To the extent the above named officer is sued in his individual capacity, he is entitled to qualified immunity as a matter of law. In Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The Court noted that reliance on this standard of objective reasonableness, or objective legal reasonableness as measured by clearly established law, is necessary to "avoid excessive disruption of government and [to] permit the resolution of many insubstantial claims on summary judgment." Id.

A further explanation of the Harlow standard was made in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987). The standard to be applied here to the Defendant in his individual capacities is one of "the objective legal reasonableness" of official conduct, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson, supra, 107 S.Ct. at 3038. As the Fourth Circuit stated in Turner v. Dammon, 848 F.2d 440, 444 (4th Cir. 1988), the Defendant is entitled to "summary judgment unless there is a genuine issue as to whether the Defendant in fact committed a violation of clearly established law."

"[T]he defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219 (1967). Officer Pacileo acted in good faith when he arrested the Plaintiff who was the

7

individual identified in an active and facially valid arrest warrant.

Applied to the instant case, the standard proposed in <u>Harlow</u>, <u>Anderson</u>, <u>Pierson</u>, and their progeny of cases would, as a matter of law, entitle Officer Pacileo to qualified immunity as there is no competent evidence that he engaged in unlawful conduct or violated any clearly established statutory or Constitutional right which is subject to redress under Section 1983. As such, to the extent Pacileo is sued in his individual capacity, he is entitled to qualified good faith immunity from suit as a matter of law and should be entitled to Summary Judgment in accordance with Rule 56 (c) of the Federal Rules of Civil Procedure.

### III. South Carolina Tort Claims Act

To the extent Plaintiff has alleged some type of South Carolina cause of action against Officer Pacileo, the South Carolina Tort Claims act prevents the Plaintiff from suing the Defendant in his individual capacity. The South Carolina Tort Claims Act § 15-78-70 says that an employee acting in the course of the scope of his employment cannot be held individually liable. As a result, Plaintiff's state law causes of actions against Officer Pacileo are covered under South Carolina Tort Claims Act.

> **§ 15-78-70. Liability for act of government employee; requirement that agency or political subdivision be named party defendant; effect of judgment or settlement.**
>
> (a) This chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefore except as expressly provided for in subsection (b).
>
> (b) Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

Code 1976 § 15-78-70. Clearly, the Officer's interactions with the Plaintiff occurred during the

scope of his police employment and consequently, he is protected from individual liability by § 15-78-70(a).

## IV. STATE CLAIMS AGAINST THE CITY OF NORTH MYRTLE BEACH

To the extent Plaintiff has made state claims against the City of North Myrtle Beach, they will be briefly addressed. For the reasons previously outlined above in response to Plaintiff's § 1983 claim for false arrest and confinement, any State claim for false arrest fails. Officer Pacileo was in possession of a felony arrest warrant for Plaintiff, and after confirming her personal information noted in the warrant, he arrested the individual noted in the warrant. The potential misidentification of Plaintiff as the alleged perpetrator of the crime by the officer who requested the warrant is a separate issue that has not been pled in this suit.

As to Plaintiff's third and fourth claims for assault and battery, Plaintiff admitted there was no truth to these claims. (Exhibit C, p. 40-41, 43, 52-53). In sworn deposition testimony, Plaintiff was asked if there was any assault and battery and she responded: "No. And no handcuffs." (Exhibit C, p. 43). Further, when Plaintiff was asked if Officer Pacileo gave her any reason to think he was going to be physical with her at any point in time, she answered: "No." (Exhibit C, p. 52-53).

Plaintiff's fifth claim contends "outrage" over Officer Pacileo's behavior. Pacileo's behavior was to properly execute a felony arrest warrant on the person identified in the arrest warrant. There is nothing outrageous in deed by Pacileo or in policy by the City of North Myrtle Beach. Again, the potential misidentification of Plaintiff as the alleged perpetrator of the crime by the officer who requested the warrant is a separate issue that has not been pled in this suit.

Lastly, the Plaintiff asserts a claim for "Defamation – Slander." Plaintiff has failed to offer any evidence of defamation or slander. "To establish a defamation claim, a plaintiff must

prove: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable regardless of harm or the publication of the statement caused special harm." <u>West v. Morehead</u>, 396 S.C. 1, 6, 720 S.E.2d 495, 498 (Ct. App 2011). Plaintiff has provided no evidence as to the publishing of any information by Officer Pacileo to anyone.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Defendant, Officer Michael Pacileo, individually and in his official capacity, and the City of North Myrtle Beach respectfully request that the Court grant summary judgment in their favor as to all causes of action brought by Plaintiff on the bases that no genuine issues of material fact exist as to whether or not the Defendants are liable to Plaintiff and Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

*s/ Michael Joseph O'Sullivan*_____
Michael Joseph O'Sullivan (Federal ID No. 11057)
Douglas Charles Baxter (Federal ID No. 4778)
RICHARDSON PLOWDEN & ROBINSON, P.A.
P.O. Box 3646
Myrtle Beach, SC 29578
(843) 448-1008
(843) 448-1533 (fax)

**Attorney for Defendants**

June 1, 2012